UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Lance DUPARD,<br>Booking No. 25754224,<br><br>                              Plaintiff,<br><br>v.<br><br>C. COSIO, Sheriff Deputy,<br><br>                              Defendant. | Case No.:  26-cv-03221-WQH-DEB<br><br>**ORDER (1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS AND (2) SCREENING PRO SE § 1983 COMPLAINT**<br><br>**(ECF Nos. 1, 2)** |

HAYES, Judge:

In this civil-rights suit filed under 42 U.S.C. § 1983, Plaintiff Lance Wilson Dupard, proceeding pro se while housed at the George Bailey Detention Facility ("GBDF"), claims a San Diego County Sheriff Deputy violated several of his constitutional rights when he handcuffed Dupard during a housing unit laundry exchange on April 29, 2026. (ECF No. 1 at 3–8.) Dupard did not pay the filing fee but instead has filed a motion to proceed *in forma pauperis* ("IFP") under 28 U.S.C. § 1915(a). (ECF No. 2.)

As explained below, the Court **GRANTS** Dupard's IFP motion and **SCREENS** his Complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A(b). The Court finds Dupard adequately alleges an excessive force claim against Defendant Cosio in Count One. But the Court finds he fails to state any plausible claim for relief in Counts Two and Three,

1

which miscellaneously allege violations related to retaliation, free speech, race discrimination, and "personal injury." (ECF No. 1 at 3, 7, 8.) Therefore, the Court **ORDERS** Dupard to either file an Amended Complaint that addresses the pleading deficiencies discussed below, or a Notice of Intent to Proceed with the excessive force claim alleged in Count One of his current Complaint.

## I.    MOTION TO PROCEED IFP

Anyone instituting a civil action in a district court of the United States must typically pay a filing fee of $405—consisting of a $350 statutory fee plus an additional $55 administrative fee—although the administrative fee does not apply to persons granted leave to proceed IFP. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023)). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP. *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007).

"While the previous version of the IFP statute granted courts the authority to waive fees for any person 'unable to pay[,]' . . . the PLRA [Prison Litigation Reform Act] amended the IFP statute to include a carve-out for prisoners." *Hymas v. U.S. Dep't of the Interior*, 73 F.4th 763, 767 (9th Cir. 2023). Namely, "if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner 'shall be required to pay the full amount of a filing fee.'" *Id.* (quoting 28 U.S.C. § 1915(b)(1)). Section 1915(b) "provides a structured timeline for collecting this fee." *Id.* (citing 28 U.S.C. § 1915(b)(1)-(2)). First, prisoners must submit a "certified copy of the[ir] trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2). Next, the Court assesses an initial payment of 20% of the greater of (a) "the average monthly deposits to the prisoner's account" or (b) "the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint." *See* 28 U.S.C. §§ 1915(b)(1) & (4); *Bruce v. Samuels*, 577 U.S. 82, 84 (2016). Unless the prisoner has no assets, prisoners who proceed IFP must pay the initial

26-cv-03221-WQH-DEB

partial assessed fee and whatever balance remains in installments regardless of whether their case is ultimately dismissed. 28 U.S.C. § 1915(b)(1) & (2); *Bruce*, 577 U.S. at 84.

Dupard has provided a trust account statement and certificate from GBDF showing he had an average monthly balance of $22.00 during the 6-month period preceding the filing of his Complaint, average monthly deposits of $22.00, and an available balance of $0.08 at the time of filing. (ECF No. 2 at 4, 6.) The Court, therefore, finds Dupard cannot pay any initial filing fee, grants his IFP motion, and orders payment of the entire fee balance in installments. *See* 28 U.S.C. § 1915(b)(2); *Taylor v. Delatoore*, 281 F.3d 844, 850 (9th Cir. 2022) ("[U]nder [28 U.S.C. § 1915(b)(4)'s] safety-valve provision, '[i]n *no* event shall a prisoner be prohibited from bringing a civil action ... for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.'").

**II.    SCREENING**

**A.    Legal Standard**

Because Dupard was imprisoned or detained at the time of filing and is proceeding IFP, his Complaint requires preliminary screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). "On review, the court shall . . . dismiss the complaint, or any portion of the complaint," if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Olivas v. Nevada ex rel. Dep't of Corr*., 856 F.3d 1281, 1283 (9th Cir. 2017) (quoting 28 U.S.C. § 1915A(b)). "The standard for dismissal for prisoner claims at screening is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Long v. Sugai*, 91 F.4th 1331, 1336 (9th Cir. 2024) (citing *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012)); *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (Section 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).").

Federal Rule of Civil Procedure 8 "prescribes the information a plaintiff must present about the merits of his claim at the outset of litigation." *Berk v. Choy*, 607 U.S. 187, 193 (2026). Together Rules 8 and 12(b)(6) require a complaint to "contain sufficient factual

26-cv-03221-WQH-DEB

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[1] Detailed factual allegations are unnecessary, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Dismissal "under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Valame v. Trump,* 157 F.4th 1172, 1173 (9th Cir. 2025) (per curiam) (citing *Somers v. Apple, Inc.* 729 F.3d 953, 959 (9th Cir. 2013)).

**B.     Plaintiff's Allegations**

In his first cause of action, Dupard alleges that, on April 29, 2026, as he "was being escorted to processing pending disciplinary action, Officer Cosio became irate and started squeezing, twisting, and pulling [Dupard's] arm when [he] was already placed in handcuffs

---

[1] "Courts must consider the complaint in its entirety," including "documents incorporated into the complaint by reference" to be part of the pleading when determining whether the plaintiff has stated a claim upon which relief may be granted. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Though resolution of a motion to dismiss under Rule 12(b)(6) is normally confined to the allegations stated in the complaint, a court "may also 'consider [1] materials that are submitted with and attached to the complaint'; [2] judicial notice of matters of public record'; and [3] unattached evidence on which the complaint necessarily relies if: [a] the complaint refers to the document; [b] the document is central to the plaintiff's claim; and [c] no party questions the authenticity of the document.'" *Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross & Blue Shield of Ill.*, 983 F.3d 435, 439 (9th Cir. 2020) (quoting *United States v. Corinthian Colls.*, 655 F.3d 984, 998–99 (9th Cir. 2011)).

26-cv-03221-WQH-DEB

tightly. So [Dupard] tried to pull away from [Cosio's] grip because [his] blood flow was cutting off and it felt like [he] was going to pass out." (ECF No. 1 at 3.)

Dupard further alleges that "[o]nce placed in the processing cell Officer Cosio was twisting [his] wrist backwards forcefully where [he] had to plead with [] Sargeant Mendiola [] to have [Mendiola] take the cuffs off [him] in Cosio's stead." *Id.*

Dupard references a GBDF disciplinary report, which he attached to this first claim saying: "Please see: Dis[ci]plinary Report Attached." *Id.*

In turn, the disciplinary report, apparently drafted by Officer Cosio, states as follows:

At approximately 2030 hours, I was assisting House 3A with laundry exchange. Before Incarcerated Persons (IP) were let out of their cell, they were all instructed multiple times to bring one blanket on their person and leave their second blanket inside their cell.

After IPs were let out of their cell as they were walking out of A module, I noticed Dupard, Lance BN 25754224 carrying a blanket while another blanket was wrapped around his waist. I informed Dupard to give me one of his blankets. Dupard complied and handed one blanket to me. Dupard was concerned that he would not get his blanket back and I informed Dupard I would put back in his cell. Dupard then became uncooperative and yelled at me and called me a "bitch, bitch ass hoe, and a punk ass hoe." I then told Dupard to turn around and put his hands behind his back. Dupard complied. I then placed Dupard into handcuffs and Deputy Valenzuela #4802, and I escorted him to processing. While escorting Dupard to processing he once again became boisterous and yelled, "Shut your bitch ass voice up, ill [sic] fuck your bitch."

When I arrived at processing, Dupard continued yelling at me and pulled away from my grasp causing me to lose my grip. I then placed my right hand on Dupard's right elbow and left hand on Dupard's left bicep. Dupard offered no resistance. I then continued my escort and advised Dupard if he pulled away from my grasp again, he would be placed on the floor.

Dupard was then placed into a single cell in processing. Before taking the handcuffs off, I attempted to give Dupard instructions on what to do when I take the handcuffs off, but he was yelling over my instructions. Sergeant

26-cv-03221-WQH-DEB

Mendiola #3740 and Deputy Hirt #4914 relieved me and took the handcuffs off Dupard without incident.

After the cell door closed, Dupard told me, "Your mom raised a real bitch, fucking faggot."

*Id.* at 4.

The report further indicates that "Nurse #6468 was notified about the lockdown." *Id.* at 5. Dupard was charged with the following violations: "101: Disrespect to staff[,] 103: Threaten/ assault staff /inmate," and "105 Boisterous activities." *Id.*

Dupard's second cause of action alleges violations of the protection against "racial discrimination" and the guarantee of "free speech." *Id.* at 7. In this second count, Dupard states he "wasn't the only speaking insults to" Defendant Cosio, but he "was the only one escorted to processing." *Id.* Because the other detainees "were white and Hispanic," and Dupard "[i]dentif[ies] as African American," Dupard "believe[s] [Cosio] singled [him] out due to [his] race and ethnicity." *Id.* Dupard comments that Cosio "failed to mention within the disciplinary report his repeated taunts and laughter after placing [Dupard] in the processing cell." *Id.* Dupard adds that "Sgt. Mendiola had to relieve Cosio of his duties because of the distress and anguish that he observed of" Dupard while "Cosio was twisting [Dupard's] arm and wrist to the point of pain during the process of escorting [Dupard] to the cell." *Id.*

Dupard alleges Cosio's conduct "is not normal corrections officer practice per training[.] [T]hey are not given the liberty to assault nor injure any inmate so long as the inmate is in compliance which [Dupard]" alleges he "was due to being placed in handcuffs with no resistance." *Id.* Dupard adds that he "pulled away from [Cosio's] grip because [he] was honestly in pain and at that point in fear of [his] life." *Id.* (citing "Floyd v. Chauvin").[2]

---

[2] The Court understands this as a reference to the widely followed Minnesota case in which a viral video depicted Derek Chauvin, a white Minneapolis police officer, killing George Floyd, a Black man, on May 25, 2020, by grinding his knee into Floyd's neck over a nine-minute and twenty-nine second period of

26-cv-03221-WQH-DEB

Finally, a third cause of action alleges "personal injury." *Id.* at 8. There Dupard alleges he was "never seen by medical" staff "d[e]spite multiple requests to be seen . . . for [his] injuries sustained in [his] wrist and arm." *Id.* at 8. While Dupard acknowledges he was given his medication "around midnight" that night, he states the attending "nurse told [him] that [he] would have to put in a medical request to be seen by a doctor." *Id.* Per Dupard, he "filed multiple request[s] with no response." *Id.*

Dupard seeks $13,750 in compensatory and punitive damages from Defendant Cosio *Id.* at 10.

## C.   Discussion

The Court finds Plaintiff Dupard's Complaint contains excessive force allegations involving Defendant Cosio sufficient to survive the "low threshold" set for *sua sponte* screening. Plaintiff's remaining claims, however, fail to state any plausible claim for relief and are subject to dismissal pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for the reasons explained below.

### 1.   Excessive Force Claim

In Count One, Dupard alleges Officer Cosio violated the Eighth Amendment when he "became irate and started squeezing, twisting, and pulling [Dupard's] arm when [he] was already placed in handcuffs tightly. So [Dupard] tried to pull away from [Cosio's] grip because [his] blood flow was cutting off and it felt like [he] was going to pass out." (ECF No. 1 at 3.) Dupard further alleges that "[o]nce placed in the processing cell Officer Cosio was twisting [his] wrist backwards forcefully where [he] had to plead with" another corrections officer to have the cuffs removed. *Id.*

Generally, the Eighth Amendment's prohibition of "cruel and unusual punishments" applies only "after conviction and sentence." *Graham*, 490 U.S. at 393 & n.6. It appears

time. *See generally State v. Chauvin*, 989 N.W.2d 1, 13–15 (Minn. Ct. App. 2023) (affirming Chauvin's conviction for second-degree unintentional murder).

26-cv-03221-WQH-DEB

Dupard, housed in a county jail at the time, was a pretrial detainee at the time of his asserted injury. Pretrial detainees' "rights arise under the Due Process Clause of the Fourteenth Amendment"[3]; they "are accorded no rights under the Eighth Amendment." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (citations omitted). To state an excessive force claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015).

Liberally construed, Dupard's claim of being subject to Officer Cosio's squeezing, twisting, and pulling of handcuffs that were already tight along with the twisting of his wrists forcefully backwards states a cognizable claim of excessive force. (*See* ECF No. 1 at 3.) To be sure, the excessive force inquiry involves "careful attention to the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396. Those circumstances include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 576 U.S. at 397. While it's true that Dupard appears to admit making antagonizing comments to Officer Cosio, taking his allegations as true at this stage, his Complaint has "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted). Notably, Dupard stresses that "Cosio was twisting [Dupard's] arm and wrist to the point of pain during the process of escorting [Dupard] to the cell." (ECF No. 1 at 7.) And where Dupard acknowledges he once pulled away from Cosio's grip, he alleges he did so "because [he] was honestly in

---

[3]The Fourteenth Amendment provides that the State shall not "deprive any person of life, liberty or property, without due process of the law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

pain and at that point in fear of [his] life." *Id.* Otherwise, the Complaint alleges that Dupard was "in compliance" and remained "placed in handcuffs with no resistance." *Id.*

The excessive force claim as pleaded therefore surpasses §§ 1915(e)(2) and 1915A(b)'s initial screening threshold.

### 2. Retaliation and Free Speech Claims

Dupard alleges that Cosio's conduct also constituted "retaliation" and "free speech [violations]." (ECF No. 1 at 3, 7.)

As to retaliation and free speech, Dupard has failed to satisfy the Rule 8 pleading standard and fails to allege facts sufficient to support a plausible claim for relief on those grounds. "Prisoners have a First Amendment right to file grievances against prison officials," *Watison*, 668 F.3d at 1114, and retaliation against a prisoner for filing grievances is an independent constitutional violation. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote omitted).

Here, Dupard fails to allege any facts in support of any of the five elements. Notably, as to engagement in protected conduct, Dupard claims to have been engaged in nothing more than "speaking insults to" Defendant Cosio. (ECF No. 1 at 7.) If Dupard wishes to proceed with a First Amendment retaliation claim, he must set forth factual allegations identifying what action Defendant Cosio took which he contends was retaliatory and the protected activity which triggered the retaliation. *See Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) ("We have repeatedly held that mere speculation that defendants acted out of retaliation is not sufficient." (citations omitted)); *Watison*, 668 F.3d at 1116–17 (retaliation claim insufficient where plaintiff, inter alia, "failed to allege that the harassment" was "connected to [plaintiff's] filing of . . . grievance").

26-cv-03221-WQH-DEB

The First Amendment retaliation claim in the Complaint is dismissed *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) under Rule 8 and for failure to state a claim. *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

### 3.    Race Discrimination Claim

Dupard further alleges that Cosio's conduct constituted "racial discrimination" based on Defendant Cosio's decision to place Cosio in disciplinary processing even while there were other prisoners of different races who also insulted Cosio. (ECF No. 1 at 7.) As to this claim, Dupard also fails to allege facts sufficient to support a plausible claim for relief. Since Dupard is unrepresented, this Court construes his claim broadly, construing it as one brought under the Equal Protection Clause. Nevertheless, the fact that Dupard is African American, and other prisoners insulting Cosio were white and Hispanic, by itself does not suffice to plead a plausible Equal Protection claim. A § 1983 Equal Protection claim requires that a plaintiff "allege facts plausibly showing that the defendants acted with an intent or purpose to discriminate against [him] based upon membership in a protected class." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013) (citation omitted); *see also Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) ("Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status."); *Fields v. Legacy Health Sys.*, 413 F.3d 943, 955 (9th Cir. 2005) (identifying "race, alienage, national origin" as examples of characteristics protected by the Equal Protection Clause).

Here, the mere mention that Dupard, who is African American, "wasn't the only one speaking insults to" Cosio, (ECF No. 1 at 7), does not amount to a plausible factual allegation that Cosio intentionally discriminated against Dupard based on his race especially where Dupard does not allege any more specific actions by others or provide additional context. "Mere indifference to the effects of a decision on a particular class does not give rise to an equal protection claim," "and conclusory statements of bias do not" plausibly set forth such a claim. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005) (citations omitted); *see also Washington v. Villaneaux*, No. 2:23-CV-09836-

CBM-MAA, 2025 WL 2989488, at *19 (C.D. Cal. Aug. 12, 2025), *r. & r. adopted sub nom. Washington v. Villanueva*, No. 2:23-CV-09836-CBM (MAA), 2025 WL 2986670 (C.D. Cal. Oct. 22, 2025) (recommending dismissal of Equal Protection claim where, "[b]eyond Plaintiff's assertion that Plaintiff is Black and Muslim . . . , he advance[d] no factual allegation that any Defendant made decisions about him based on those classifications."). Plaintiff's equal protection claim is dismissed *sua sponte* pursuant to 28 U.S.C. § 1915A for failure to state a claim. *Wilhelm*, 680 F.3d at 1121; *Iqbal*, 556 U.S. at 679.

### 4.    Inadequate Medical Care Claim

While not explicitly alleged as an independent constitutional cause of action, Dupard also alleges he did not receive medical attention despite (1) Cosio's indication he contacted Nurse #6468 and (2) Dupard's statement that he requested attention when he received medication the night of his alleged injury. (ECF No. 1 at 5, 8.). Prisoners bringing claims of deliberate indifference to a serious "may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourteenth Amendment's Due Process Clause." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1067–68 (9th Cir. 2016) (en banc) (citation omitted). Under either clause, a plaintiff must show that the prison officials acted with "deliberate indifference." *Id.* at 1068; *see generally Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (noting that for sentenced prisoners, "[t]he government has an 'obligation to provide medical care for those whom it is punishing by incarceration,' and failure to meet that obligation can constitute an Eighth Amendment violation cognizable under § 1983." (quoting *Estelle v. Gamble*, 429 U.S. 97, 103–05 (1976))).

But to plead a claim under § 1983, a plaintiff must allege that there is an actual connection or link between the actions of a defendant and the constitutional deprivations alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an

affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). In turn, a § 1983 action premised on violation of the Fourteenth Amendment for inadequate medical care requires allegations that each defendant acted with deliberate indifference to the plaintiff's serious medical needs. *Castro v. County of Los Angeles*, 833 F.3d 1060, 1067–68 (9th Cir. 2016) (en banc).

The test for deliberate indifference has two parts. First, a plaintiff must plead "a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation marks omitted). Second, a plaintiff must allege that "the defendant's response to the need was deliberately indifferent." *Id.* A showing of deliberate indifference requires "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* (internal quotation marks and citation omitted).

While Dupard alleges he suffered pain during the encounter with Cosio, he does not allege the nature of his serious medical need. Nor does he seek to sue any of the medical staff who were alleged to have received information that he was requesting medical attention. Finally, Dupard does not allege any harm caused by the alleged indifference to his pain or possible medical need.

Thus, to the extent that Dupard sought to plead a claim of deliberate indifference to his medical needs claim, it is dismissed *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A for failure to state a claim. *Iqbal*, 556 U.S. at 679.

### 5.    Plaintiff's Options

Even though Dupard's Complaint requires dismissal with respect to the claims of retaliation and free speech violations, race discrimination, and inadequate medical care for

failure to state a claim, he may file an Amended Complaint that corrects all the deficiencies of pleading identified in this Order. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a *pro se* complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012))).

If Dupard chooses to file an Amended Complaint, that pleading will be subject to another preliminary screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b) before the Court determines whether U.S. Marshal Service upon any defendant is warranted. If Dupard does nothing, the Court will dismiss the case based on his failure to prosecute in compliance with a court order.

## III.    CONCLUSION

Thus, for the reasons explained, the Court:

1.      **GRANTS** Dupard's motion to proceed IFP (ECF No. 2).

2.      **DIRECTS** The Facility Commander of GBDF, or his designee, to collect from Dupard's trust account the $350 filing fee owed in this case by garnishing monthly payments from his account in an amount equal to twenty percent (20%) of the preceding month's income and forward those payments to the Clerk of the Court each time the amount in the account exceeds $10. *See* 28 U.S.C. § 1915(b)(2).

3.      **DIRECTS** the Clerk of Court to serve a copy of this Order on the Facility Commander, George Bailey Detention Facility, 446 Alta Road, Suite 5300, San Diego, California, 92158.

4.      **DISMISSES** all claims of retaliation, First Amendment violations, race discrimination, and inadequate medical care against Defendant Cosio based on Dupard's failure to state a plausible claim for relief under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

5.      **GRANTS** Dupard forty-five (45) days' leave from the date of this Order in which to either: (A) file a Notice of Intent to Proceed with his excessive force claim only; *or* (B) file an Amended Complaint that corrects the deficiencies of pleading identified in

this Order. If Dupard files a Notice of Intent to Proceed with his excessive force claim only, he may include a request that the U.S. Marshal effect service of summons and his original Complaint on Cosio pursuant to 28 U.S.C. § 1915(d) and Fed. R. Civ. P. 4(c)(3).

If Dupard instead chooses to amend, his new pleading must be clearly titled as his Amended Complaint, contain S.D. Cal. Civil Case No. 26-cv-3221-WQH-DEB in its caption, and be complete in itself without reference to his original Complaint. Defendants not named and any claim not realleged in Plaintiff's Amended Complaint, *including the currently sufficient excessive force claim alleged against Cosio in his original Complaint*, will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled").

If Dupard fails to file an Amended Complaint or a Notice of Intent to Proceed within the time provided, the Court will enter a final Order dismissing this civil action based both on Dupard's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

Dated:  July 13, 2026

Hon. William Q. Hayes
United States District Court

14

26-cv-03221-WQH-DEB